EXHIBIT "B"

**Summary of Terms and Conditions
For Senior DIP Credit Facility
March 5, 2015~~March 2, 2015~~**

| | |
|---|---|
| **Debtor:** | New York Military Academy. |
| **Lender:** | ITG Taxable Fund Management, LLC or its assigns ("**Lender**"). |
| **Credit Facility:** | Debtor-In-Possession Term Loan (the "**DIP Loan**") up to $2,000,000 (the "**Commitment**"). |
| **Initial Disbursement:** | Upon entry of an interim financing order (the "**Interim Order**") by the Court under Bankruptcy Code § 364(c) and (d) (in form and substance agreeable to the Debtor and the Lender), $750,000 of the Commitment shall be funded by the Lender pursuant to the Budget (as defined below) (the "**Initial Disbursement**"). |
| **Final Disbursement:** | Upon entry of a final financing order (the "**Final Order**") by the Court under Bankruptcy Code§ 364(c) and (d) (in form and substance agreeable to the Debtor and the Lender), the balance of the Commitment shall be made available by the Lender pursuant to the Budget (the "**Final Disbursement**"). |
| **Initial Closing Date:** | Closing of the DIP Loan with respect to the Initial Disbursement shall occur as soon as practicable after the entry of the Interim Order, but no later than two (2) business days after entry of such order. (the "**Initial Closing Date**"). |
| **Final Closing Date:** | Closing of the DIP Loan with respect to the Final Disbursement shall occur as soon as practicable after the entry of the Final Order, but no later than two (2) business days after entry of such order. (the "**Final Closing Date**"). |
| **Amortization:** | All DIP Loan Principal will be due on the Due Date. |
| **Prepayment:** | The DIP Loan can be prepaid in whole or part without prepayment fees. |
| **Interest Rate:** | 10.0% payable monthly, on the 1st of each calendar month, in arrears. Interest will be calculated on actual days earned over 360 day calendar basis. If the DIP Loan is not fully repaid at maturity or upon other events of default, then the interest rate becomes 16.0% per annum. |
| **Use of Proceeds:** | Proceeds of the DIP Loan shall be utilized as follows: (i) general working capital and operational expenses; (ii) administration of |

the Bankruptcy Case (in each case of (i) and (ii), in accordance with a weekly cash flow budget prepared by the Debtor, in form and substance acceptable to the Lender on a line-by-line basis (the "**Budget**")); and (iii) costs, expenses, closing payments, and all other payment amounts contemplated herein.

For the avoidance of doubt, neither the proceeds of the DIP Loan nor the Carve-Out (as defined below) shall be utilized (i) to attack the validity, priority or enforceability of any of the liens or security interests of the Lender, (ii) to research, review, analyze or investigate with respect to or in connection with any litigation, claim, objection or cause of action of any kind or nature whatsoever against the Lender (whether or not arising from or related to pre-petition or post-petition liens, security interests, acts, omissions or other conduct), or (iii) to file, prosecute or otherwise pursue any litigation, claim, objection or cause of action of any kind or nature whatsoever against the Lender (whether or not arising from or related to post-petition liens, security interests, acts. omissions or other conduct).

**Term**: Any and all then outstanding principal amount of the DIP Loan (the "**DIP Loan Principal**") plus any unpaid accrued Interest or Default Interest (as the case may be) plus any Costs and Expenses and other amounts due under the DIP Loan, this Term Sheet, the Interim Order and the Final Order (each, a "**DIP Loan Obligation**" and collectively, the "**DIP Loan Obligations**") shall become due and payable in full in cash upon the earlier of the following (the "Due Date"): (i) one year from the Initial Closing Date; (ii) the substantial consummation (as defined in Bankruptcy Code § 1101 and which for purposes hereof shall be no later than the effective date) of a confirmed plan of reorganization; (iii) conversion of any of the Bankruptcy Cases to a case under Chapter 7 of the Bankruptcy Code; (iv) appointment of a trustee for the Debtor; (v) dismissal of any of the Bankruptcy Cases; (vi) thirty (30) days after the entry of the Interim Order if the Final Order has not been entered prior to the expiration of such thirty (30) day period; (vii) the date on which the Court enters a final order approving a post-petition financing between the Debtor and another lender(s) or investor(s) (as the case may be) (other than the Lender); (viii) consummation of a sale of a material portion of of the Debtor's assets under Bankruptcy Code § 363; and (ix) five (5) business days after the Lender notifies the Debtor and its counsel in writing of an Event of Default which is not subsequently cured or waived by the end of such notice period. The Lender may extend the Due Date in its sole discretion.

**Collateral**: The DIP Loan shall be secured by: (i) a perfected first priority lien on any and all current and future assets of the Debtor of any nature or type whatsoever, including, without limitation, real estate (any improvements thereon), cash, accounts, accounts

2

|  |  |
|---|---|
|  | receivable, goods, instruments, investment property (including, without limitation, ownership interests in corporations, partnerships and limited liability companies), inventory, vehicles, customer lists, trademarks, copyrights, brands, know-how and other intellectual property, minerals, mineral rights, plant and equipment, patents, trade secrets, tax assets, real property and/or leasehold rights, personal property, any causes of action under the Bankruptcy Code or applicable non-bankruptcy law, excluding causes of action and recoveries pursuant to Chapter 5 of the Bankruptcy Code, all other tangible and intangible assets, and any and all proceeds of the foregoing; (ii) a first priority pledge of the shares, capital stock and/or equity interest held directly or indirectly by the Debtor; and (iii) constructive control over the Debtor's bank accounts in similar form and substance of lockbox and/or control accounts customary for transactions of this nature exercisable upon an Event of Default and stay relief from the Court or as may be provided in the Interim Order and Final Order (collectively the "**Collateral**"). |
| **Priority**: | The DIP Loan shall be authorized and approved by the Court pursuant to Bankruptcy Code § 364(c)(1) to be incurred as, and shall constitute, claims with a priority over all administrative expenses of the kind specified in Bankruptcy Code§ 503(b) or 507(b). The security interests and liens in the Collateral securing the DIP Loan shall be authorized and approved by the Court pursuant to Bankruptcy Code § 364(c)(2), (3), and 364(d) to constitute a lien on and in the Collateral ranking prior to all other claims and liens of the Debtor, except for the Carve-Out as defined below (the "**Priming Lien**"). The Priming Lien will be senior in priority to security interests and liens securing the indebtedness and other obligations owing under any of the Debtor's prepetition loan and security agreements. The Priming Lien shall not be subject to challenge, but instead shall attach and become valid and perfected without the requirement of any further action by the Lender. |
| **Carve-Out**: | Except as otherwise provided below, the administrative expense claims and the liens granted to the Lender hereunder shall be subject and subordinate only to the Carve-Out. "**Carve-Out**" means any (i) unpaid fees of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C.§ 1930; (ii) unpaid fees and expenses of the professionals of the Debtor and any official committee of unsecured creditors retained by an order of the Court pursuant to Section 327, 328, 363 or 1103(a) of the Bankruptcy Code (the "**Professionals**") incurred prior to the occurrence of an Event of Default, to the extent such fees and expenses are (a) within the amounts set forth in the Budget approved by the Lender, (b) subsequently allowed by the Court under Sections 330, 331 or 363 of the Bankruptcy Code, and (c) not otherwise payable from retainers or any professional expense |

3

|  |  |
|---|---|
|  | escrow account established by the Debtor. The Carve Out for professional fees will be reduced dollar for dollar by all post-petition payments as well as any pre-petition deposits made on professional fees so that the amount paid to professionals will never exceed the Budget. Counsel for Debtor waives the right to seek a surcharge on Collateral for its fees and expenses under Code Section 506(c) or otherwise. Notwithstanding the generality of the foregoing, the Carve Out shall be capped at $150,000.00. |
| **Commitment Fee:** | 1.0% of the total Credit Facility paid at closing from the proceeds of the Initial Disbursement of the DIP Loan. |
| **Due Diligence Deposit:** | $7,500 paid at closing from the proceeds of the Initial Disbursement of the DIP Loan. |
| **Monthly Monitoring Fee:** | $2,500 per month due on the 1st day of the first calendar month after Initial Disbursement and on the 1st of each calendar month thereafter until the DIP Loan is fully repaid. |
| **Cost and Expenses:** | The Debtor shall reimburse the Lender for all reasonable costs incurred in connection with the DIP Loan, and the DIP Loan Obligations (as defined below), including, without limitation, legal fees, advisor fees, consultant fees, costs and expenses, collateral valuations, appraisals, surveys, field examinations, third party diligence, lien searches, filing fees, and all other out-of-pocket costs and expenses in any way related to the DIP Loan and/or the DIP Loan Obligations and the enforcement and collection thereof (collectively, the "**Costs and Expenses**"). *In the event that the DIP Loan is not consummated, the Lender shall have the right to seek reimbursement of all reasonable Costs and Expenses incurred with respect thereto as an administrative expense of the Debtor's estate pursuant to Bankruptcy Code § 503(b), and the Debtor hereby acknowledges and agrees that such amount shall constitute an administrative expense of the Debtor's estate.* |
| **Reserve Account:** | The Debtor shall establish with the Lender an interest reserve account ("**Reserve Account**") which will be funded with loan proceeds in an amount equal to twelve (12) months interest based on outstanding borrowings with Lender. The Reserve Account shall be available to pay interest and Lender's post-petition expenses and fees as they come due. Notwithstanding Lender's right to use the Reserve Account to pay interest and expenses, Debtor shall, upon request of Lender, replenish the Reserve Account after interest and expense payments are made from the Reserve Account within five (5) business days of the request. |
| **Representations and** |  |

4

**Warranties**:   The Debtor makes usual and customary representations and warranties for transactions of this nature, including, without limitation, good standing of the Debtor; no consent or approval is required other than the Interim Order and the Final Order; due authorization, execution and delivery of loan documents; no violation of material agreements entered into after the commencement of the Bankruptcy Cases; no violation of law as a result of the execution of the DIP Loan Documents; no liens on the assets of the Debtor except for valid, perfected and non-avoidable liens and security interests in existence as of the commencement of the Bankruptcy Cases and certain other liens permitted by the Lender; compliance with applicable laws and regulations; no material change in business; no unstayed litigation that is reasonably likely to have a material adverse effect on the operations of the Debtor taken as a whole or the Collateral; no information furnished by Debtor to the Lender or the Court contains any material misstatement of fact or omitted to state a material fact necessary to make the statements therein not materially misleading; taxes paid to the extent required by law; and material returns filed.

**Covenants:**   The Debtor shall comply with all of the following covenants:

1.   The Debtor shall promptly provide the Lender with updates of any material developments in connection with the Debtor's reorganization efforts under the Bankruptcy Cases, whether in connection with an asset sale, plan of reorganization or otherwise;

2.   The Debtor shall deliver the Budget as updated on a weekly basis to the Lender (in form and substance reasonably acceptable to the Lender), including, without limitation, forecasts, sales pipeline, accounts receivable and cash flow;

3.   The Debtor shall deliver a semi-monthly payroll report to the Lender (in form and substance reasonably acceptable to the Lender);

4.   The Debtor shall operate its business in accordance with the Budget (subject to a permitted variance of 15% per line item and in the aggregate), and the requirements of the Bankruptcy Code and orders of the Court;

5.   Without the prior written consent of the Lender, the Debtor shall not seek or consent to occur any of the following:

   a.   Any order which authorizes the assumption or rejection of any leases or contracts of any of the Debtor;

      b.      Any modification, stay, vacation or amendment to the Final Order to which the Lender has not consented in writing;

      c.      A priority claim or administrative expense or unsecured claim against any of the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including without limitation, any administrative expense of the kind specified in Bankruptcy Code § 105, 326, 328, 330, 331, 364(c) 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 or 1114) equal or superior to the priority claim of the Lender in respect of the obligations hereunder, except with respect to the Carve-Out;

      d.      Any lien on any Collateral having a priority equal or superior to the lien securing the obligations hereunder, other than with respect to the Carve-Out;

      e.      Any order which authorizes the payment of any indebtedness incurred prior to the petition date;

      f.      Any order seeking authority to take any action that is prohibited by the terms of this Term Sheet, the Interim Order or the Final Order or refrain from taking any action that is required to be taken by the terms of this Term Sheet, the Interim Order or the Final Order; and

      g.      Any other action that would materially adversely affect the Lender in any way.

**Events of Default**: Each of the following shall constitute an "Event of Default', unless otherwise waived by the Lender in its sole discretion:

1.      Debtor shall fail to pay any DIP Loan Obligation in cash after such payment has become due;

2.      Any report, certificate or other document delivered to the Lender pursuant to this Term Sheet, the Interim Order or the Final Order shall have been incorrect in any material respect when made or deemed made;

3.      The failure of Debtor to comply in all material respects with any covenant, agreement or terms and conditions of the Interim Order, the Final Order and this Term Sheet;

4.      Any of the Debtor is enjoined, restrained or in any way prevented by the order of any court or any governmental authority from conducting all or any material part of its business for more than three (3) consecutive days;

6

5. Any material damage to, or loss, theft or destruction of, any Collateral, whether or not insured, or any strike, lockout, labor dispute, embargo, condemnation, act of God or public enemy, or other casualty (whether or not insured) which causes, for more than three (3) consecutive days, the cessation or substantial curtailment of revenue producing activities at any facility of the Debtor, if any such event or circumstance could reasonably be expected to have a material adverse effect;

6. The entry of an order in the Bankruptcy Cases which stays, modifies (in any manner adverse to the Lender), or reverses the Interim Order or Final Order or which otherwise materially adversely affects, as determined by the Lender in its discretion, the effectiveness of the Interim Order or Final Order without the express written consent of the Lender;

7. The conversion of any of the Bankruptcy Cases to a case under Chapter 7 of the Bankruptcy Code;

8. The appointment of a trustee for the Debtor;

9. The dismissal of any of the Bankruptcy Cases; provided that the Lender has not consented in writing to such dismissal;

10. The entry of any order which provides relief from the automatic stay otherwise imposed pursuant to Bankruptcy Code § 362 that permits any creditor to (i) realize upon, or to exercise any right or remedy with respect to, any material portion of the Collateral, or (ii) to terminate any license, franchise or similar agreement, wherein either case the exercise of such right or remedy or such realization or termination would be reasonably likely to have a material adverse effect;

11. Subject to the allowance and payment of any amounts due under the Carve-Out, the filing of any application by Debtor, without the express written consent of the Lender, for the approval of a super-priority claim in the Bankruptcy Cases which is on parity with or senior to the priority of the claims of the Lender, or there shall arise any such super-priority claim under the Bankruptcy Code;

12. The payment or other discharge by Debtor of any prepetition indebtedness without the written consent of the Lender;

13. The filing of any motion by Debtor seeking, or the entry of any order in the Bankruptcy Cases: (a) permitting working capital or other financing (other than ordinary course trade debt or unsecured debt) for any of the Debtor from any person other than the Lender (unless the proceeds of such financing are to be used to pay in full in cash all obligations arising under this Term

7

Sheet, the Interim Order and the Final Order); (b) granting a lien on, or security interest in, any of the Collateral, other than with respect to this Term Sheet (unless such liens are granted in connection with a financing, the proceeds of which are to be applied to the payment in full in cash of all obligations arising under this Term Sheet, the Interim Order and the Final Order, and other than liens granted as adequate protection for pre-petition liens on the Debtor's assets, which adequate protection liens shall be junior in priority to the Lender's super priority priming liens); (c) except as permitted by this Term Sheet, the Interim Order or the Final Order, permitting the use of any of the Collateral pursuant to Bankruptcy Code § 363 without the prior written consent of the Lender, or permitting recovery from any portion of the Collateral any costs or expenses of preserving or disposing of such Collateral under Bankruptcy Code § 506(c); or (d) dismissing the Bankruptcy Cases, unless the Lender has sought or consented in writing to such relief by the Court;

14. The filing of a motion or other pleading by the Debtor seeking the entry of an order confirming a plan of reorganization (and/or approving a disclosure statement related thereto) that does not require payment in full in cash of all obligations under this Term Sheet, the Interim Order and the Final Order on the consummation date of such plan of reorganization, and as to which Lender has not consented in writing;

15. The filing of any pleading by any of the Debtor challenging the validity, priority, perfection or enforceability of this Term Sheet, the Interim Order, the Final Order or the obligations hereunder or thereunder, or any lien granted pursuant to this Term Sheet, the Interim Order or the Final Order is determined to be null and void, invalid or unenforceable by the Court or another court of competent jurisdiction in any action commenced or asserted by any other party in interest in the Bankruptcy Cases;

**Default Remedies**:    Upon five (5) business days' written notice to the Debtor and its counsel of an Event of Default which is not subsequently cured or waived during such notice period:

1. The DIP Loan shall mature and any and all DIP Loan Obligations shall become due and payable in full in cash;

2. The Lender shall have standing to move for an order to cause the Debtor to engage in a process to liquidate its assets pursuant to Bankruptcy Code §363; and

3. The Lender shall have the right to an emergency hearing requesting relief from the automatic stay otherwise imposed

8

|  |  |
|---|---|
|  | pursuant to Bankruptcy Code § 362 that permits the Lender to realize upon, or to exercise any right or remedy with respect to, any portion of the Collateral. |
| **Conditions Precedent**: | This Term Sheet is subject to, among other items, the Entry of the Interim Order and Final Order by the Court, authorizing borrowing pursuant to this Term Sheet. |